**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

BALWINDER SINGH,

                            Plaintiff,        **REPORT AND RECOMMENDATION**

   -against-

                                                **19-CV-00632 (EK) (ST)**

THE CITY OF NEW YORK, P.O. MANDEEP
CHEEMA, Tax Id. No. 950196, Individually and in his
Official Capacity, and POLICE OFFICERS "JOHN
DOE" #1-10, Individually and in their Official Capacity
(the name John Doe being fictitious, as the true names are
presently unknown),

                            Defendant.
-------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

On February 1, 2019, Balwinder Singh ("Plaintiff") filed a Complaint against the City of New York, and Police Officers Mandeep Cheema and John Doe #1-10 (collectively, "Defendants"). Plaintiff alleged, *inter alia*, claims for false arrest and excessive force in violation of the Fourth Amendment to the United States Constitution under 42 U.S.C. § 1983; and claims for false arrest, assault, and battery under New York law. Now before this Court are (1) Plaintiff's Motion for Summary Judgment on the excessive force claim; and (2) Defendants' Cross-Motion for Summary Judgment on excessive force, false arrest, and New York law claims. The Honorable Eric Komitee referred the Motions to the undersigned to issue a Report and Recommendation.

For the reasons stated below, this Court respectfully recommends that (1) Plaintiff's Motion for Summary Judgment be denied; and (2) Defendants' Cross-Motion for Summary Judgment be granted in part and denied in part.

1

I.  BACKGROUND

   A. Factual Background

Plaintiff, an Indian American male, is a resident of Queens, New York. Compl. ¶ 6.

Defendant City of New York is a municipal corporation that maintains New York City Police Department ("NYPD"). Police Officers Mandeep Cheema and John Doe #1-10 are employed by NYPD. *Id*. ¶¶ 7-10.

On February 28, 2018, around mid-night, Plaintiff was shopping when he ran into an old friend. Pl.'s Mot. at 1; Pl.'s Dep. Tr. at 31, Ex. A, DE 46. Plaintiff's friend asked him to join him for a beer and Plaintiff agreed. *Id*. On the way home, Plaintiff purchased a pack of six beers. *Id*. When Plaintiff reached home, he continued to drink beer throughout the night in his living room. *Id*. Admittedly, Plaintiff consumed at least four beers that night. Pl.'s Dep. Tr. at 34. Notably, in 2004, Plaintiff received treatment for alcohol abuse and had been sober for many years. Pl.'s Mot. at 1.

At approximately 6:15 a.m., Plaintiff's wife found Plaintiff in an intoxicated state. *Id*. at 2. Out of concern for Plaintiff's health, his wife called 911 to request medical attention. *Id*.; Defs.' Cross Mot. at 3. Upon receiving the medical request, the 911 operator immediately transferred Plaintiff's wife to the Emergency Medical Services ("EMS"). *Id*.

At approximately 6:30 a.m., two EMS workers or Emergency Medical Technicians ("EMT"), Nicole Milonas and Marisabel Schiapira, arrived at Plaintiff's residence from Jamaica Hospital Medical Center ("JHMC"). *Id*. The EMTs found Plaintiff to be intoxicated and determined that he needed medical evaluation. *Id*. Even though Plaintiff refused to go to the hospital, the EMTs concluded that he needed medical evaluation because his wife had previously stated that "[he] [was] a harm to himself" and also because Plaintiff was "non-cooperative with

[the EMTs'] questioning." *Id*. EMT Milonas further noted that Plaintiff showed aggressiveness in his response to their questioning, yelled profanities, and belligerently approached the EMTs, but he was otherwise not violent towards anyone and did not physically assault anyone. *Id*.; Milonas Dep. Tr. at 49, Ex. E, DE 46. Because Plaintiff refused to go to the hospital voluntarily, EMT Milonas called the police for assistance. Defs.' Cross Mot. at 3. It is undisputed that Plaintiff had a Glasgow Coma Score of 15, which indicated that he had the mental capacity to refuse medical attention at that time. Pl.'s Mot. at 2; PHC Report, Ex. L, DE 48.

At approximately 7:00 a.m., Cheema and his fellow Police Officers, Justin Davis and Malinda Walker (collectively, "Police Officers"), entered Plaintiff's residence. Pl.'s Mot. at 3. After initially trying to convince Plaintiff to voluntarily go to the hospital, Cheema finally told Plaintiff that he had no choice and that he would be taken to the hospital one way or the other. *Id*. at 4; Cheema Dep. Tr., Ex. C at 85-86, DE 46. Specifically, Cheema told Plaintiff that he could either go voluntarily, without handcuffs or the Police Officers would forcibly handcuff Plaintiff and take him to the hospital. Pl.'s Mot. at 4. Plaintiff agreed to go voluntarily. *Id*. at 5.

As Plaintiff readied himself and stood near the front door of his apartment, surrounded by all three Police Officers, he jokingly stated that he no longer wanted to go to the hospital. *Id*. Plaintiff then put his arms behind his back and jokingly stated the Police Officers should "handcuff [him]." Pl.'s Mot. at 5-6; Cheema Dep. Tr. at 165, Ex. C, DE 46. As Officer Cheema approached Plaintiff to handcuff him, Plaintiff then brought his hands forward to the front of his body, smiled back at Officer Cheema, and said, "I'm just joking. You're not going to handcuff me," after which Plaintiff took a step forward towards the door where Officer Walker was standing. Pl.'s Mot. at 6; Cheema's Dep. Tr. at 102; Video, Ex. G(1) at 7:57-8:03; Ex. G(2); Ex. G(3)). At that point, Cheema grabbed Plaintiff from behind, wrapped his arms across Plaintiff's

3

chest in a seatbelt hold, and took Plaintiff to the ground. Defs.' Rule 56.1 St., ¶ 102-105; Pl.'s Mot. at 7. Cheema then handcuffed Plaintiff, with Davis' assistance. *Id*. Cheema believed Plaintiff had taken a "sudden" step towards Walker, who was standing against the front door. Cheema Dep. Tr. at 103, Ex. C, DE 46; Defs.' Mot. at 4.

After Plaintiff was handcuffed, all three Police Officers assisted him to his feet. Defs.' Rule 56.1 St. ¶ 106. Plaintiff was then escorted out of the location and transported to JHMS. *Id*. ¶¶ 110-111. At approximately 8 a.m., Plaintiff's blood alcohol level was still approximately three times the legal driving limit. *Id*. ¶¶ 112-114. Officer Cheema left Plaintiff in the care of JHMC shortly after his arrival. *Id*. ¶ 117. Plaintiff was discharged from JHMC at approximately 3 p.m. the same day. *Id*. ¶ 119.

Cheema testified that his actions, including taking Plaintiff to the ground, were "based off of everything that happened from the time that [they] got in and to that very moment, and the different levels of escalation." Defs.' Rule 56.1 St. ¶¶ 81-82. Plaintiff, on the other hand, highlights the impact of his fall and Cheema's weight of two hundred sixty-five-pounds and height of six feet and three inches with which he slammed Plaintiff to the ground. Cheema Dep., Ex. C at 7, DE 46; Pl.'s Mot. at 3. As a result of the fall, Plaintiff landed directly on his right shoulder, which had previously been injured in a car accident he had in 2010, and also hit his head on the ground. Pl.'s Mot. at 7. The fall caused Plaintiff to suffer an abrasion to his head and exacerbated his previous injuries. *Id*.; *see* Plaintiff's Expert Reports, Cohen Dec., Ex. K; Photographs of Plaintiff's Face Injury, Cohen Dec., Ex. L.

### B. Procedural History

On February 1, 2019, Plaintiff filed a Complaint against Defendants. DE 1. The Complaint alleged claims for excessive force, false arrest, and failure to intervene in violation of

the Fourth Amendment to the United States Constitution under 42 U.S.C. § 1983 and claims for false arrest, assault and battery, intentional infliction of emotional distress, and negligent hiring, training, or retention under New York law. *Id.*

On November 29, 2021, Plaintiff filed his Motion for Summary Judgment for excessive force and Defendants filed their Cross-Motion for Summary Judgment for excessive force, false arrest, failure to intervene, and New York law claims for assault, battery, negligent hiring and retention, and intentional infliction of emotional distress. DE 46-48. Plaintiff withdrew the federal law claim for failure to intervene and the state law claims for negligent hiring and retention, and intentional infliction of emotional distress. *See* Pl.'s Opp., n. 17 at 27.

On April 9, 2022, The Honorable Eric Komitee referred the Motions to the undersigned to issue a Report and Recommendation. *See* Order Referring Motion, DE dated Apr. 9, 2022.

**II.    JURISDICTION**

This action is brought pursuant to 42 U.S.C. §§ 1983, 1988, and the Fourth Amendment to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343 and 1367.

**III.    LEGAL STANDARD**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists as to a material fact when "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether a genuine dispute exists as to a material fact, the Court is required to "resolve all ambiguities and draw all permissible factual inferences in favor

of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted). "If there is evidence in the record from which an inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." *Holt v. KMI-Cont'l*, 95 F.3d 123, 129 (2d Cir. 1996).

A "party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as mere "conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted). "The moving party bears the initial burden of establishing that there are no genuine issues of material fact[;] once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal citations omitted).

## IV. DISCUSSION

### A. Reasonableness of Cheema's Use of Force under 42 U.S.C. § 1983 is a Question for the Factfinder

Plaintiff moves for summary judgment on his claim for Cheema's use of excessive force when he slammed Plaintiff to the ground. Defendants cross-move for summary judgment on Plaintiff's claim for excessive force.

"The Fourth Amendment protects individuals from the government's use of excessive force when detaining or arresting individuals." *Jones v. Parmley*, 465 F.3d 46, 61 (2d. Cir. 2006); *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999). "Determining excessiveness requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Douglas v. City*

*of New York*, 730 Fed. Appx. 12, 16 (2d Cir. 2018) (citing *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015)). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *See Graham* v. Connor, 490 U.S. 386, 395 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). The reasonableness of force can only be determined based on an assessment of the totality of the circumstances. *See Graham*, 490 U.S. at 395; *Sullivan v. Gagnier*, 225 F. 3d 161, 165 (2d Cir. 2000).

When determining whether police officers have employed excessive force, the Supreme Court has instructed that courts should examine whether the use of force is objectively unreasonable "in light of the facts and circumstances confronting them, without regard to [the officers'] underlying intent or motivation." *Graham*, 490 U.S. at 397. The touchstone of the inquiry is reasonableness, and in measuring it, the courts consider factors "including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest." *Thomas*, 165 F.3d at 143. Indeed, the Supreme Court has further elaborated that it does "not consider this list to be exclusive," stating "[w]e mention these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

Excessive force claims require an objective assessment of the reasonableness of any force "at the moment" it was used. *Graham*, 490 U.S. at 396-97. Indeed, the Supreme Court has cautioned that in analyzing excessive force claims, courts must make "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*.

Here, Plaintiff neither committed any crime nor violated any law nor resisted arrest. Defendants' primary contention is that Plaintiff took a step towards Officer Walker that seemed to be a potential physical threat. Though the Second Circuit has not yet ruled on the issue, many courts have viewed the "immediate threat to the safety of the officers or others" as the most important *Graham* factor. *Ramos v. Town of E. Hartford*, No. 3:16-CV-166 (VLB), 2019 WL 2785594 at 18 (D. Conn. July 2, 2019); *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994); *Pauly v. White*, 874 F.3d 1197, 1216 (10th Cir. 2017) (this factor "is undoubtedly the 'most important' and fact intensive factor in determining the objective reasonableness of an officer's use of force"). It is this factor in particular that "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Rogoz v. City of Hartford*, 796 F.3d 236, 246 (2d Cir. 2015).

The Court finds that Plaintiff's excessive force claim cannot be resolved as a matter of law at this juncture because there are disputed issues of material fact that preclude a grant of summary judgment. The reasonableness of the use of force is to be judged in light of the facts and circumstances with which an officer is presented. *Graham*, 490 U.S. at 397. And here, Cheema's use of force used against Plaintiff was deployed as an instantaneous response to a potential safety threat he posed against Walker. At the moment force was applied, Cheema believed that Plaintiff posed a potential physical threat to Walker or others. Cheema Dep. Tr. at 103, Ex. C, DE 46; Defs.' Mot. at 4. It is undisputed that no force was used against Plaintiff up to the point where he made a sudden movement toward Officer Walker. When Plaintiff jokingly avoided arrest and took a step while raising his hands towards the front door of his apartment where Walker stood, Cheema took Plaintiff to the floor. Cheema's observations led him to

8

believe that Plaintiff was intoxicated, erratic, and belligerent. In that moment, Cheema made a split-second determination to take Plaintiff to the ground. *Smith v. City of New Haven*, 166 F. Supp. 2d 636, 643 (D. Conn. 2001) (concluding on summary judgment that there was a genuine issue of material fact as to whether officers used excessive force when they "forced [the plaintiff] to the ground, face down," and when one of the officers then "sat on his back"); *Rogoz*, 796 F.3d at 248 (holding that "[t]he question of [Plaintiff's] credibility was a matter for the factfinder; it was not a matter that the court could properly resolve on a motion for summary judgment.").

Upon reviewing Plaintiff's Motion for Summary Judgment, were a jury to view evidence in favor of non-movants/Defendants, it could reasonably conclude that Cheema used a reasonable amount of force because Plaintiff posed a threat towards his fellow Police Officers. On Defendants' Cross-Motion, were a jury to credit evidence in favor of Plaintiff, it could reasonably conclude that when Cheema pushed Plaintiff to the ground, he used an unreasonable amount of force. *See e.g.*, *Rogoz*, 796 F.3d at 248 (denying summary judgment because factual issues existed as to whether arrestee had been complying with arresting officer's directions); *Baker v. City of New York*, 551 F.Supp.3d 258 (S.D.N.Y. 2021) (Viewing the evidence "in the light most favorable" to Plaintiff and drawing "all reasonable inferences in its favor, […] the Court finds that Plaintiff's excessive force claim cannot be resolved as a matter of law at this juncture"); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) ("Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable.")

Thus, this Court respectfully recommends that Plaintiff's Motion and Defendants' Cross Motion for Summary Judgment be denied because there are genuine issues of fact as to the reasonableness of Cheema's use of force against Plaintiff.

### B. Officer Cheema had Probable Cause to Arrest Plaintiff

Defendants moves for summary judgment on Plaintiff's false arrest claims under 42 U.S.C. § 1983 and New York law.

The Fourth Amendment of the United States Constitution provides a right to be free from unreasonable seizures, which includes the right to be free from arrest without probable cause. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Probable cause to arrest is justification, and "is a complete defense to an action for false arrest." *Id.* (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)); *see also Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir. 1995); *Broughton v. State,* 37 N.Y.2d 451, 458 (1975). Probable cause depends on the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 233 (1983). "In sum, probable cause does not demand any showing that a good-faith belief be correct or more likely true than false." *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007) (citing *Texas v. Brown*, 460 U.S. 730, 742 (1983)).

The elements of a false arrest claim under §1983 are analogous to those under New York law.[1] *Id.*; *see Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (a § 1983 claim for false arrest that is alleged to have occurred in New York is "substantially the same as a claim

---

[1]The Court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Claims are part of the same case or controversy if they derive from a common nucleus of operative fact[s]." *SAT Int'l Corp. v. Great White Fleet (US) Ltd.*, No. 03-CV-7481, 2006 WL 661042, at 5 (S.D.N.Y. Mar. 16, 2006) (citation omitted). Here, Plaintiff's state and federal claims arise out of a common nucleus of operative facts, namely, Plaintiff's seizure and transportation to JHMS.

for false arrest under New York law); *Hygh v Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992) (the elements of a claim of false arrest under § 1983 are "substantially the same as the elements of a false arrest claim under New York law). Under federal and state law, a plaintiff bringing a false arrest and/or false imprisonment claim must demonstrate that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged. *Hatcher v. City of New York*, 15-CV-7500 (VSB), 2018 WL 1583036 at 3 (S.D.N.Y. Mar. 27, 2018); *Singer*, 63 F.3d at 118. With respect to both the constitutional claim and the state law, probable cause operates as a complete defense. *Weyant*, 101 F.3d at 852.

Here, it is undisputed that Defendants intended to confine Plaintiff, Plaintiff was conscious of the confinement, and Plaintiff did not consent to the confinement. At issue is whether Plaintiff's arrest was privileged and whether Defendants had probable cause to arrest Plaintiff.

New York Mental Hygiene Law ("NYMHL") provides that "[a] person who appears to be incapacitated by alcohol and/or substances to the degree that there is likelihood to result in harm to the person or to others may be taken by…a police officer…to a treatment facility for purposes of receiving emergency services." *Ortiz v. City of N.Y.*, No. 15 Civ. 2206 (DLC), 2016 WL 7009059 at 2 (S.D.N.Y. Nov. 30, 2016) (citing N.Y. Mental Hyg. Law § 22.09(b)(2)). A person is "incapacitated" if he or she "as a result of the use of alcohol and/or substances, is unconscious or has his or her judgment otherwise so impaired that he or she is incapable of realizing and making a rational decision with respect to his or her need for treatment." *Id*. § 22.09(a)(2). Under NYMHL, the terms "likely to result in harm" or "likelihood to result in harm" are specifically defined as:

11

a substantial risk of physical harm to the person as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that the person is dangerous to himself or herself, or (ii) a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.

NYMHL § 22.09(a)(3). In interpreting this statute, courts have concluded that a "showing of probable cause in the mental health context requires only probability or substantial chance of dangerous behavior, not an actual showing of such behavior." *Heller v. Bedford Cent. Sch. Dist.*, 144 F. Supp. 3d 596, 622 (S.D.N.Y. 2015), aff'd, 665 Fed. App'x. 49 (2d Cir. 2016); *Dunkelberger v. Dunkelberger*, No. 14–CV–3877 (KMK), 2015 WL 5730605, at 12 (S.D.N.Y. Sept. 30, 2015). Whether a person seized pursuant to the NYMHL is later found to be mentally competent and released is irrelevant to the probable cause analysis. *See Bayne v. Provost*, No. 1:04 CV 44, 2005 WL 1871182 at 7 (N.D.N.Y. Aug. 4, 2005).

Consequently, "[a] warrantless seizure [under NYMHL] for the purpose of involuntary hospitalization may be made only upon probable cause, that is, only if there are reasonable grounds for believing that the person seized is dangerous to herself or to others." *Anthony v. City of New York*, 339 F.3d 129, 137 (2d Cir. 2003) (citation omitted). In such instances, the relevant probable cause inquiry "is whether the facts and circumstances known to the [officers] at the time they determined to take Plaintiff into custody were sufficient to warrant a person of reasonable caution in the belief that Plaintiff might be […] conducting himself in a manner [ ] likely to result in serious harm to himself as those terms are defined by the MHL." *Burdick v. Johnson*, No. 1:06–CV–1465 (LEK/RFT), 2009 WL 1707475 at 6 (N.D.N.Y. June 17, 2009) (internal citations omitted).

Here, the circumstances known to Cheema indicated that Plaintiff was heavily intoxicated to the point that he might pose a danger to himself or others. First, Plaintiff's wife called 911 to

request medical attention. Defs.' Rule 56.1 St., ¶¶ 61-64, 91. Plaintiff's wife reported that Plaintiff was heavily intoxicated and that he was a harm to himself even though she later testified that her intention was to convey that Plaintiff's health was at risk. *Id*. ¶ 67. Second, the EMTs determined, based on their own observations, that Plaintiff was intoxicated and needed medical evaluation. The EMTs felt unsafe based on Plaintiff's aggressive movements toward them and requested police assistance. *Id*. ¶¶ 68-73. The EMTs told the Police Officers that Plaintiff was uncooperative towards their questioning and that he needed to go to the hospital for treatment. *Id*. Third, Cheema's own observations of Plaintiff's intoxication led him to conclude that Plaintiff was too intoxicated to care for himself. Cheema observed that Plaintiff was drunk and incoherent. *Id*. ¶¶ 72, 75-76. Cheema also overheard Plaintiff making threats toward his wife in his native language, Punjabi. *Id*. ¶¶ 88-89. Ultimately, while attempting to "jokingly" avoid arrest, Plaintiff took a step towards the front door where Walker stood, at which point, Cheema believed that Plaintiff posed a potential physical threat and took him to the ground to arrest him. Pl.'s Mot. at 6; Cheema's Dep. Tr. at 102. Based on these facts, a reasonable officer could have concluded there was probable cause to believe Plaintiff was incapacitated within the meaning of NYMHL § 22.09 and needed to be transported to the hospital for treatment. See e.g., *Vallen v. Connelly*, No. 99 Civ. 9947(SAS), 2004 WL 555698 at 8-9 (S.D.N.Y. Mar. 19, 2004) (holding that the defendants had probable cause to arrest the plaintiff under the NYMHL because he posed as danger to himself or others); *Burdick*, 2009 WL 1707475 at 6 (holding that probable cause to arrest the plaintiff existed because he could have been a potential danger).

Thus, this Court recommends that Defendants' Cross-Motion for Summary Judgment should be granted for Plaintiff's false arrest claim because Cheema had probable cause to arrest Plaintiff under 42 U.S.C. §1983 and under NYMHL.

### C. Reasonableness of Cheema's Use of Force under New York Law is a Question for the Factfinder

Plaintiff's Complaint also alleged New York law claims for assault and battery against Defendants. Defendants move for summary judgment on the alleged assault and battery claims.

The Second Circuit recently reiterated that the elements of, and defenses to, a state law assault and battery claim are the same as for a federal excessive force claim. *See Tardif v. City of N.Y.*, 991 F.3d 394, 410 (2d Cir. 2021). "The elements of New York assault and battery and Section 1983 excessive force claims are 'substantially identical.'" *Id*. at 410 (citing *Posr v. Doherty,* 944 F.2d 91, 94-95 (2d Cir. 1991). Here, Plaintiff's assault and battery claims are predicated on the same conduct of Plaintiff's seizure and transportation to JHMS, and are governed by the same standard of reasonableness, as his excessive force claim under § 1983.

"To succeed on assault or battery claims in the law enforcement context, a plaintiff must also demonstrate that the defendant officers' conduct 'was not reasonable within the meaning of the New York statute concerning justification of law enforcement's use of force in the course of their duties.'" *Tardif*, 991 F. 3d at 410 (citing *Nimely v. City of N.Y.*, 414 F. 3d 381, 391 (2d Cir. 2005)). The Court went on to explain that the justification defense available for law enforcement action under New York law "requires the jury to conduct precisely the same analysis as does the reasonableness standard" under the Fourth Amendment. *Tardif*, 991 F.3d at 410 (citing *Heath v. Henning*, 854 F.2d 6, 9 (2d Cir. 1988)). This defense extends to any force utilized in the performance of any "public duty." *See Id.*, at 411.

The Court finds that Plaintiff's assault and battery claims, similar to Plaintiff's excessive force claims, cannot be resolved as a matter of law at this juncture because there are disputed issues of material fact that preclude a grant of summary judgment. There are numerous disputes

concerning what the circumstances confronting Cheema were, including whether Plaintiff did in fact pose a threat to any or all the Officers. *See e.g., Rizk v. City of New York*, 462 F.Supp.3d 203, 228 (E.D.N.Y. 2020) (holding that "the elements for a claim of assault and battery against law enforcement officers under New York law and a claim of excessive force under § 1983 are the same" and since "genuine issues of material facts preclude the Court from determining whether defendants used excessive force […] [,] defendants' motion for summary judgment with respect to the assault and battery claim is [also] denied.").

As stated above, this Court respectfully recommends that Plaintiff's Motion and Defendant's Cross-Motion for Summary Judgment be denied for excessive force claims under 42 U.S.C. § 1983. In that vein, this Court further respectfully recommends that summary judgment for Plaintiff's state law claims for battery and assault should also be denied.

### D. Defendants are Entitled to Qualified Immunity for Plaintiff's False Arrest Claims but Factual Issues Preclude Resolution of this Issue for Excessive Force, Assault and Battery Claims

Defendants seek qualified immunity for Plaintiff's claims including false arrest, excessive force, and New York law claims for assault and battery. Plaintiff argues that Defendants are not immune from the claims alleged.

"Governmental actors, including police officers, enjoy qualified immunity from suit for constitutional violations under 42 U.S.C. § 1983." *Guan v. City of New York*, 2020 WL 6688855 at 13 (S.D.N.Y. Sept. 18, 2020); quoting *Myers v. Patterson*, 819 F.3d 625, 633 (2d Cir. 2016). The Supreme Court has established a two-part inquiry to determine when a district court should hold that the doctrine of qualified immunity bars a suit against government officials: (1) the court must first consider whether the facts alleged, when taken in the light most favorable to the party

asserting the injury, demonstrate a violation of a constitutional right; and (2) the court must then consider whether the officials' actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known," *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *Jones v. Parmley*, 465 F.3d 46 (2d. Cir. 2006); Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "Even assuming a state official violates a plaintiff's constitutional rights, the official is protected nonetheless if he objectively and reasonably believed that he was acting lawfully." *Id*.

As to false arrest, qualified immunity protects an officer "so long as he had 'arguable probable cause' to arrest, which 'exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Brock v. City of New York*, 15-CV-1832 (VSB), 2018 WL 3579099 at 7-8 (S.D.N.Y. July 25, 2018) (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) ). "[T]o determine whether a mental-health seizure is justified by arguable probable cause, a court must review the specific observations and information available to the officers at the time of a seizure." *Myers*, 819 F.3d at 625. Here, even if Defendants' actions were not supported by probable cause, they were objectively reasonable under the circumstances. The facts establish that Plaintiff's wife requested medical help because he was highly intoxicated; that EMTs concluded his condition constituted incapacitation; and that Cheema's own observations led him to believe that Defendant was intoxicated and needed evaluation. Accordingly, Defendants are entitled to qualified immunity, which is an alternative basis to dismiss Plaintiff's false arrest claim, since Defendants did have probable cause to arrest Plaintiff. *See Vallen*, 2004 WL 555698 at 10; *Burdick*, 2009 WL 1707475 at 7.

As to excessive force, Defendants argue that Cheema's use of force to slam Plaintiff to the ground was objectively reasonable since he posed a threat to Walker. Since the reasonableness of Defendants' actions is examined when deciding the excessive force claim as discussed above, as well as in the second step of the qualified immunity test, "[t]he conclusion that factual disputes preclude summary resolution of the excessive force claims also precludes a finding that the officers are entitled to qualified immunity with respect to the excessive force claims." *Hicks v. The City of New York*, 2015 WL 5774575 at 10 (E.D.N.Y. Aug. 27, 2015); quoting *Ryan v. Moss*, 2013 WL 956722, at 11 (W.D.N.Y. Mar.12, 2013).

As to New York law claims of false arrest, assault and battery, "New York law…grant[s] government officials qualified immunity except where the officials' actions are undertaken in bad faith or without a reasonable basis." *5 Borough Pawn, LLC v. City of N.Y.*, 640 F. Supp. 2d 268, 286 (S.D.N.Y. 2009) (citing *Papineau*, 465 F.3d at 63). The Court in *5 Borough Pawn* further explained that qualified immunity under state law that, "as is true of federal law, an officer's entitlement to qualified immunity under New York law depends on the reasonableness of his actions." *5 Borough Pawn*, 640 F. Supp. 2d 268, 286 (S.D.N.Y. 2009) (citations omitted); *Hargroves v. City of N.Y.*, No. 03-CV-1668 (RRM)(VMS), 2014 U.S. Dist. LEXIS 41661, at 10-11 (E.D.N.Y. Mar. 26, 2014) (citing *Papineau*, 465 F.3d at 64 (reasoning that federal qualified immunity analysis "applies to, and controls, the qualified immunity questions presented under New York law")). "[T]hus, where an officer's actions are deemed objectively reasonable, that officer will be immune under both federal and state law." *Hargroves*, 2014 U.S. Dist. LEXIS 41661, at *10-11; *see also Mangino v. Inc. Vill. of Patchogue*, 814 F. Supp. 2d 242, 250 n.5 (E.D.N.Y. 2011) (applying the court's qualified immunity analysis on the federal claims to the identical state-law claims). Even where qualified immunity under state law is not specifically

invoked, courts have held that, "because of the similarities between the federal and New York doctrines of qualified immunity, if defendants would be entitled to qualified immunity under federal law, summary judgment [is] similarly appropriate on…state law [claims]" *Garcia v. Cty. of Westchester*, No. 11-CV-7258 (KMK), 2017 U.S. Dist. LEXIS 191980, at *50 (S.D.N.Y. Nov. 20, 2017) (citing *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007)). Since Defendants have qualified immunity for arresting Plaintiff under federal law, Defendant also have qualified immunity for arrest under New York State law. As to Plaintiff's claim of assault and battery, since the reasonableness of Defendants' actions is examined when resolving these claims as well as in the second step of the qualified immunity test, the conclusion that factual disputes preclude summary resolution of the assault and battery claims also precludes a finding that the officers are entitled to qualified immunity with respect to such state law claims. *See Jones*, 465 F.3d at 64 (denying qualified immunity as to New York law claims of assault and battery since the resolution of these claims involves the assessment of reasonableness).

Thus, this Court respectfully recommends that Defendants should have qualified immunity as to Plaintiff's false arrest claim, whereas the issue of qualified immunity should be resolved by the factfinder as to Plaintiff's excessive force, assault, and battery claims.

## V. CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Plaintiff's Motion for Summary Judgment be denied, and Defendants' Cross-Motion for Summary Judgment be granted as to false arrest and denied as to excessive force, assault, and battery claims because there are issues of fact as to whether Cheema's use of force was reasonable under the given circumstances. Defendants are further entitled to qualified immunity for Plaintiff's false arrest

claims but factual issues preclude resolution of this issue for excessive force, assault and battery claims.

## VI. OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at 30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

    /s/_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
       June 28, 2022